UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THALLISON VITOR SILVA DE SOUZA,
    Petitioner,

v.

ANTONE MONIZ, et al.,
    Respondents.

Civil Action No. 1:26-cv-12947-ADB

PETITIONER'S MOTION TO ENFORCE ORDER

Petitioner Thallison Vitor Silva De Souza respectfully moves, pursuant to this Court's inherent authority to enforce its own judgment and 28 U.S.C. § 2241, for an order enforcing the Court's July 7, 2026 judgment granting his petition for a writ of habeas corpus (ECF No. 8) and directing his immediate release from custody.

## I.    INTRODUCTION

On July 7, 2026, this Court ordered Respondents to "provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 10 days." ECF No. 8. Respondents convened a hearing, but the proceeding they provided did not comply with this Court's Order or the Fifth Amendment's guarantee of due process. The Immigration Judge denied bond on a finding of dangerousness that rested on a single, uncorroborated police report describing a charge that was dismissed more than a year earlier, while ignoring the substantial evidence Petitioner submitted, and without considering any alternative to his continued detention. A hearing conducted in that manner does not discharge Respondents' obligation under this Court's judgment.

This motion presents the same question this Court recently addressed in *Gamitto de Souza v. Wesling*, No. 1:26-cv-12059-ADB (D. Mass. July 27, 2026) (electronic order), and that

1

at least four sessions of this Court have answered in materially identical circumstances. In each case, the Court held that a § 1226(a) bond hearing that rests on an uncorroborated police report, disregards the detainee's evidence, and ignores alternatives to detention is constitutionally deficient and does not satisfy an order requiring such a hearing, and in each case, the Court ordered immediate release. The Court should reach the same result here.

Petitioner respectfully requests expedited consideration. Petitioner remains detained on a constitutionally deficient bond order, and his final merits hearing is set for August 28, 2026, such that absent prompt relief he will remain confined through that hearing on the basis of an unlawful detention

## II.    BACKGROUND

Petitioner is a twenty-two-year-old native and citizen of Brazil who has lived in the United States since February 2023. *See* Exh. 1. He was briefly detained at entry and released on an Alternatives to Detention ("ATD") program. On April 5, 2023, the Department discharged him from that program because his participation was no longer required. *Id*. Petitioner appeared throughout his removal proceedings and pursued relief within the system. U.S. Citizenship and Immigration Services ("USCIS") approved his Special Immigrant Juvenile Status petition (Form I-360), a humanitarian classification for juveniles who cannot safely reunify with one or both parents because of abuse, neglect, or abandonment. USCIS also granted him Deferred Action. On November 26, 2024, an Immigration Judge terminated his removal proceedings. *Id*.

On June 25, 2026, U.S. Border Patrol agents detained the Petitioner following a motor-vehicle stop near Princeton, Maine. The following day, ICE Enforcement and Removal Operations officers served him with an arrest warrant, took him into ICE custody without incident. *See* Exh 1. On June 28, 2026, Petitioner filed a petition for a writ of habeas corpus,

arguing that his detention without a bond hearing was unlawful. Consistent with its decision in *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602 (D. Mass. Sept. 30, 2025), and Respondents' concession that "[s]hould the Court follow its reasoning in *Morales*, it would reach the same result here," the Court granted the petition on July 7, 2026. ECF No. 8. The Court held that Petitioner "is subject to 8 U.S.C. § 1226's discretionary detention framework and, accordingly, entitled to a bond hearing" that "[h]e has not received," so "his detention is unlawful." *Id.* The Court ordered Respondents to "provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 10 days," enjoined them from denying bond on the basis that he is detained under § 1225(b)(2), and directed entry of judgment in Petitioner's favor. *Id.*

### A. The bond hearing.

Respondents convened a custody redetermination hearing before Immigration Judge Kathryn Frames on July 16, 2026. In support of continued detention, DHS submitted two exhibits: the Form I-213 (Record of Deportable/Inadmissible Alien) and a Revere Police Department report concerning an August 26, 2024 charge of assault and battery on a household member, a charge that was dismissed on May 22, 2025, over a year prior to his recent encounter. *See* Exh. 1, DHS Submission of Evidence. The I-213 supplied no evidence of dangerousness; to the contrary, it documented Petitioner's compliance with DHS supervision, including his discharge from the ATD program and the termination of his prior removal proceedings on an approved SIJS petition. *See* Exh. 1. The police report was thus the sole item DHS offered to show danger. That report reflects that the responding officers observed no injuries; that officers could only communicate with the complainant and her mother through a translation application because of a "strong language barrier"; and that the complainant's mother, the only other identified witness, was not present during the alleged incident. *See* Exh. 1. No photographs,

medical records, or other evidence corroborate the allegations, and the charge never resulted in a conviction. DHS's argument was that Petitioner "was charged with assault and battery on a family member," that although the "case was dismissed … for failure to prosecute, the Court can and should still consider it," and that he was a flight risk because he had "no applications pending."

Petitioner, through counsel, submitted documentary evidence in support of release and argued that the uncorroborated police report could not be given substantial weight under *Matter of Arreguin de Rodriguez*, *Rosa v. Garland*, and *Maurice v. Bondi*. Petitioner's evidence included his valid employment authorization and record of steady work in construction; documentation of his U.S.citizen half-sister and sponsor, with whom he had previously resided; evidence of additional family ties, including a sister in Woburn and a niece in Haverhill; and letters of support from members of his community, including his partner and her mother. *See* Exh. 2. Counsel also detailed Petitioner's history of compliance, including his completion of the Alternatives to Detention ("ATD")  program, his appearance in his prior removal proceedings, the termination of his removal case on an approved SIJS petition, and his arrest by ICE that occurred without incident. *See* Exh. 1.

### B.  The Immigration Judge's decision.

On July 20, 2026, four days after the bond hearing, the Immigration Judge issued a written decision denying bond. *See* Exh. 3, Bond Order. The decision rested on a single ground that Petitioner's "recent criminal history," which the Immigration Judge described entirely by reference to the allegations in the police report, that he "grabbed his former girlfriend by the back of the neck and cornered her" and possessed "intimate photos of the victim." The Immigration Judge acknowledged that "the charges were dismissed due to a failure to

prosecute," but reasoned that "this is not a not guilty finding," and concluded that DHS had "established that the Respondent poses a danger to the community by clear and convincing evidence."

The Immigration Judge did not weigh any of the evidence Petitioner submitted in her decision. She did not address his employment, his family and community ties, his U.S. citizen sponsor, his letters of support, his approved SIJS petition, or his record of compliance with ICE and the immigration court in his prior proceedings. Nor did the IJ consider whether any condition or combination of conditions short of detention could address the danger DHS asserted.

### III.    ARGUMENT

#### A. The Court has jurisdiction to determine whether the bond hearing complied with its judgment.

"[A] district court retains jurisdiction to review compliance with its earlier order conditionally granting habeas relief." *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 142 (D. Mass. 2019); *accord Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255, at *3 (D. Mass. Apr. 14, 2020). Neither 8 U.S.C. § 1226(e) nor the administrative-exhaustion doctrine bars that review. Section 1226(e) forecloses review of the Attorney General's "discretionary judgment," but it does not preclude challenges to "constitutionally defective procedures." *Brito v. Garland*, 22 F.4th 240, 253 (1st Cir. 2021); *see Hernandez-Lara v. Lyons*, 10 F.4th 19, 33–34 (1st Cir. 2021). Petitioner does not ask the Court to reweigh the evidence or to second-guess the IJ's discretionary judgment; he asks whether Respondents complied with the Court's Order by providing a hearing that satisfied "constitutionally mandated burdens of proof." *Gamitto de Souza v. Wesling*, No. 1:26-cv-12059-ADB (D. Mass. July 27, 2026) (electronic order); *accord Machado da Silva v. Moniz*, No. 1:26-cv-11798-JEK (D. Mass. July 10, 2026) (electronic order);

*Martinez Aguilar v. McDonald*, No. 1:25-cv-13638-LTS (D. Mass. June 5, 2026), slip op. at 3 (a motion to enforce is not "a vehicle for ordinary appellate review of an IJ's bond determination"). To make that showing, Petitioner may "point to the language of the immigration judge's opinion" or "demonstrate that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." *Diaz Ortiz*, 384 F. Supp. 3d at 143. Relief is warranted where the Immigration Judge's "exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *Id.* at 144.

Similarly, exhaustion is excused where a petitioner "remains detained" and would "suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Brito*, 22 F.4th at 256; *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997); *accord Vargas v. Warden*, No. 26-cv-11740-AK, 2026 WL 1453510, at *4–5 (D. Mass. May 22, 2026). In any event, this is a motion to enforce this Court's own judgment, not a new challenge subject to exhaustion.

**B.  The bond hearing did not comply with the Court's Order or Due Process.**

A § 1226(a) bond hearing must comport with the Fifth Amendment. To justify continued detention on dangerousness grounds, due process requires the government to "prove by clear and convincing evidence that [the detainee] poses a danger to the community." *Hernandez-Lara*, 10 F.4th at 41. The hearing here fell short in three independent respects, each of which this Court and its sister sessions have held renders a bond hearing constitutionally deficient.

**1.  *The dismissed charge and uncorroborated police report could not, as a matter of law, establish dangerousness by clear and convincing evidence.***

The Immigration Judge's dangerousness finding rested on an uncorroborated police report describing a charge that had been dismissed over a year earlier. An Immigration Judge "may

generally consider a police report . . . when making a discretionary immigration decision, even if an arrest did not result in a charge or conviction." *Mele v. Lynch*, 798 F.3d 30, 32 (1st Cir. 2015). However, the First Circuit has drawn a firm line at the weight such a report may carry: "[A] police report, absent a conviction, must be corroborated before the [Immigration Judge] may give the report substantial weight." *Maurice v. Bondi*, 154 F.4th 15, 22 (1st Cir. 2025). Thus "the agency may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report." *Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (quoting *In re Arreguin de Rodriguez*, 21 I& N Dec. 38, 42 (BIA 1995)). And "[t]he fact of a prosecution does not itself constitute corroboration"; reliance on the fact of a charge "is simply additional reliance on the police report." *Id.* at 21.

The police report the Immigration Judge relied on does not meet that standard. The charge was not merely "unresolved", it was dismissed. The report reflects that the responding officers observed no injuries; that they could communicate with the complainant and her mother only through a translation application; that the sole other identified witness was not present during the alleged incident; and that no photographs, medical records, or other evidence corroborated the allegations. *See* Exh. 1. There was, in short, neither a conviction nor any corroboration, only the uncorroborated report itself. On that record, DHS could not, as a matter of law, carry its burden of proving dangerousness by clear and convincing evidence, and the Immigration Judge's contrary conclusion "could not, as a matter of law, have supported" the denial of bond. *See Gamitto*, No. 1:26-cv-12059-ADB.

Judges of this District have repeatedly reached that same conclusion on materially indistinguishable records. In *Machado da Silva*, the court similarly ordered immediate release where an Immigration Judge found dangerousness "by clear and convincing evidence" based on

a "reliable" police report and "pending charges," holding that "[a]n uncorroborated police report describing [the detainee's] arrest is insufficient, as a matter of law, to constitute clear and convincing evidence of dangerousness." No. 1:26-cv-11798-JEK (D. Mass. July 10, 2026) (electronic order). In *Miti v. Moniz*, the Court ordered release where bond had been denied based only on "a police report describing a delayed allegation of misdemeanor assault, where the officers observed no physical injuries." No. 26-cv-11327-BEM, 2026 WL 884639, at *1 (D. Mass. Mar. 31, 2026).

The Immigration Judge's decision demonstrates that she failed to hold DHS to the clear-and-convincing evidence standard she acknowledged. The IJ treated the untested allegations in the police report as established fact, faulting Petitioner because, although "the charges were dismissed due to a failure to prosecute," "this is not a not guilty finding," and concluding that "the Court finds it concerning that the Respondent behaved in such dangerous conduct during his short duration in the United States." *See* Exh. 3 (Bond Order) at 3–4. Both statements invert the governing burden. The first discounts the dismissal of the charge on the ground that "this is not a not guilty finding." But it was DHS's burden to prove that Petitioner is dangerous; Petitioner had no burden to prove that he is not. That the charge ended in dismissal rather than acquittal did nothing to satisfy DHS's burden. Second, the IJ presumes that the alleged conduct occurred, treating the complainant's hearsay account, conveyed through a translation application and unsupported by any observed injury, photograph, or conviction, as sufficient proof of the allegation. Clear and convincing evidence, however, requires proof sufficient to produce "a firm belief or conviction" that the alleged conduct occurred, *Matter of Patel*, 19 I&N Dec. 774, 774 (BIA 1988); *see Addington v. Texas*, 441 U.S. 418, 425 (1979); it is not satisfied by presuming an uncorroborated accusation true and asking whether Petitioner has

8

disproved it. A dangerousness finding built on that inverted premise cannot be reconciled. *See Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard.").

The passage of time from the alleged incident compounds the problem. Dangerousness under § 1226(a) must be assessed as of the present, and "the [detainee's] conduct during the intervening years must be accounted for in any effort to meaningfully assess the risks he presently poses." *Mijango Velasco v. Wesling*, No. 1:26-cv-11355-LTS (D. Mass. Apr. 24, 2026), slip op. at 6; see *Gamitto*, No. 1:26-cv-12059-ADB (electronic order) (faulting the Immigration Judge for failing to account for the years since the petitioner's last law-enforcement contact). Here, the sole allegation is almost two years old, was dismissed in May 2025, and the record reflects no further law-enforcement contact of any kind since. The decision does not acknowledge, let alone weigh, that Petitioner's only alleged incident is both stale and isolated, a further reason the finding of present danger could not, as a matter of law, have supported the denial of bond.

### 2. *The Immigration Judge ignored Petitioner's substantial evidence.*

Independently, the hearing was deficient because the Immigration Judge failed to meaningfully engage with, or acknowledge in any way, the body of evidence relevant to the bond determination that Petitioner presented. Although an Immigration Judge "'need not discuss ad nauseam every piece of evidence,' [she] 'may not simply ignore substantial testimonial and documentary proof.'" *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (quoting *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)); *see Gamitto*, No. 1:26-cv-12059-ADB (electronic order) (granting motion to enforce where the Immigration Judge "failed to grapple with, or acknowledge in any way, the body of evidence … presented by Petitioner"). Adjudicating

9

"whether to detain or release another person … is one of the more serious matters resolved by judges," and "requires review and consideration of all the relevant evidence submitted." *Rogerio Ramos v. Moniz*, No. 1:26-cv-11388-LTS (D. Mass. Apr. 27, 2026), slip op. at 5.

Here, the Immigration Judge's decision does not mention a single piece of Petitioner's evidence. It says nothing about his steady employment, his U.S.-citizen sponsor, his family and community ties, his letters of support, his approved SIJS petition, prior grant of Deferred Action, or his years-long record of appearing before the Immigration Court and complying with DHS supervision. Nor does the decision ever explain why a single, dismissed, uncorroborated allegation shows that Petitioner poses a present danger. "[T]he logical underpinnings of an immigration judge's decision[] must be clear from the record." *López-Gómez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025) (quoting *Rivera-Medrano v. Garland*, 47 F.4th 29, 39 (1st Cir. 2022)). Resting a denial of liberty on an uncorroborated police report "without so much as mentioning [the detainee's] evidence[] falls well short of what due process requires." *Rogerio Ramos*, slip op. at 5.

### 3. *The Immigration Judge failed to consider alternatives to detention.*

Finally, the hearing was deficient because the Immigration Judge never considered whether any alternative to detention could address the danger DHS asserted. Due process requires that consideration: "IJs must consider … alternative conditions of release during section 1226(a) bond hearings." *Hernandez-Lara*, 10 F.4th at 45. An Immigration Judge's "failure to consider whether alternatives to detention or other less restrictive means could address the risks … [is] constitutionally deficient." *Costa v. McDonald*, No. 25-cv-13469-AK, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026); *accord Machado da Silva*, No. 1:26-cv-11798-JEK (electronic order); *Gamitto*, No. 1:26-cv-12059-ADB (electronic order). The decision here is silent as to any

10

alternative to detention, even though Petitioner's evidence identified a stable residence with his U.S. citizen sponsor and a network of family support. That silence, standing alone, rendered the hearing constitutionally inadequate. *Rogerio Ramos*, slip op. at 5.

4.  **The Immigration Judge's recitation of the governing standards does not cure her failure to apply them.**

The Immigration Judge's decision runs four pages, but its length does not distinguish it from the one-page, check-the-box orders this Court has repeatedly found constitutionally inadequate. *See Rogerio Ramos*, slip op. at 2 (form order that "provides no reasoning, cites no evidence, and does not in any way reflect whether the IJ considered any alternatives to detention"); *Mijango Velasco v. Wesling*, No. 1:26-cv-11355-LTS (D. Mass. Apr. 24, 2026), slip op. at 2 (same). The added pages supply form, not substance. The decision recites the correct burden and the governing custody factors. The Bond Order correctly recites that DHS bears the burden of proving dangerousness by clear and convincing evidence under *Hernandez-Lara*; quotes *Addington v. Texas* and *Matter of Patel* on what that standard demands; and it sets out the factors the Board of Immigration Appeals ("BIA") has held "significant in custody redetermination," including the respondent's fixed address, length of residence, family ties, employment history, and immigration record and eligibility for relief. However, that apparent thoroughness makes the constitutional defect more glaring. Having recited the eight factors that a custody determination requires it to weigh, the decision's operative analysis applies not one of them. *Id.* at 3–4. It does not mention that Petitioner has a fixed address, has lived in the United States since 2023, has extensive family ties here, maintained steady employment, or holds an approved SIJS petition, each a factor the decision itself identifies as significant, and each supported by evidence the Immigration Judge claimed to have considered "in its entirety." Instead, after three pages of boilerplate language, the decision rests, exactly as a check-the-box

11

order would, on the single uncorroborated police report and a dismissed charge. "Merely stating the proper standard does not discharge the obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025). A written decision that recites the law and then neglects to apply it is no more constitutionally adequate than a form order that recites nothing at all; the deficiency lies in the analysis, not its length. *See Gamitto*, No. 1:26-cv-12059-ADB (electronic order) (decision "failed to satisfy the minimum requirements of due process" notwithstanding the Immigration Judge's stated reasoning); *Barnica-Lopez*, 59 F.4th at 530. If anything, the decision's careful recitation of the governing factors underscores the arbitrariness of the result. It shows that the Immigration Judge knew precisely which considerations a custody determination requires her to weigh, yet weighed none of them against continued detention. That is the hallmark of a decision "so arbitrary that it would offend fundamental tenets of due process." *Diaz Ortiz*, 384 F. Supp. 3d at 144.

## IV.    The appropriate remedy is immediate release.

Because Respondents failed to provide the constitutionally adequate hearing this Court's Order required, Petitioner's "continued detention … violates the Court's Order allowing the petition." *Rogerio Ramos*, slip op. at 6. "[T]he traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), and in each of the materially identical cases described above, including this Court's recent decision in *Gamitto*, the Court ordered the detainee's immediate release. The Court should follow that practice here.

This District has repeatedly ordered the immediate release of § 1226(a) detainees whose bond hearings suffered these same defects. *See*, e.g., *Machado da Silva*, No. 1:26-cv-11798-JEK (electronic order); *Zamora Luna v. Moniz*, No. 26-cv-12190-JEK (D. Mass. June 29, 2026); *Alcantara Guerrero v. Wesling*, No. 26-cv-10928-JEK (D. Mass. July 2, 2026); *Rogerio Ramos*,

12

slip op. at 6; *Martinez Aguilar*, slip op. at 3; *Mijango Velasco*, slip op. at 7; *Costa*, 2026 WL 371198, at *3.

Immediate release is appropriate because the record affirmatively establishes that Petitioner is neither a danger nor a flight risk. The Immigration Judge made no flight-risk finding, and the undisputed record shows that Petitioner completed his ATD program, appeared at every proceeding, obtained termination of his removal case on an approved SIJS petition, and surrendered to ICE without incident at the time of his arrest. Exh. 2.

To the extent Respondents attempt to defend the denial on flight-risk grounds the Immigration Judge never adopted, that theory independently fails. The government argued only that release was "speculative" because Petitioner had "no applications pending." That is mistaken both legally and factually. Legally, a "speculative relief" rationale is not a permissible substitute for the flight-risk inquiry, which turns on objective factors such as prior compliance, family ties, and history of appearances. *See Vargas v. Warden*, No. 26-cv-11740-AK, 2026 WL 1453510, at *5–6 (D. Mass. May 22, 2026). Factually, Petitioner is not without an avenue of relief, and the government's contention that he has "no applications pending" severely misconstrues the record. U.S. Citizenship and Immigration Services ("USCIS") has already approved his Special Immigrant Juvenile Status ("SIJS") petition (Form I-360), a visa classification reserved for juveniles found to be dependent on the Probate and Family Court, who are unable to reunify with one or both parents due to abuse, neglect, or abandonment. An approved I-360 is not a "speculative," or even a pending, application; it is a benefit the government has already conferred, and it affords Petitioner a bona fide path to lawful status and every incentive to appear and see his case through rather than abscond. Indeed, it was that same approved petition, together with a grant of Deferred Action, that led an Immigration Judge to terminate Petitioner's prior

13

removal proceedings in 2024. Every objective factor thus cuts against flight. Petitioner completed the ATD program, appeared throughout his prior proceedings, obtained a favorable termination by pursuing relief within the system, holds an approved SIJS petition, and maintains substantial family and community ties.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant this motion to enforce its judgment; order Respondents to release Petitioner immediately, without prejudice to Respondents' imposing reasonable conditions of supervision within seven days of the Court's order; direct Respondents to file a status report confirming their compliance; and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
Counsel for Petitioner,

*/s/ Gabriela J. Cerretani*
Gabriela J. Cerretani                                    Dated: August 12, 2026
BBO # 706130
George Cote Law
235 Marginal Street
Chelsea, MA 02150
gcerretani@georgescotelaw.com

14

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Undersigned counsel certifies that she has conferred with counsel for Respondents. Respondents oppose the relief requested in this motion.

*/s/ Gabriela  Cerretani*
Gabriela J. Cerretani

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Gabriela  Cerretani*
Gabriela J. Cerretani

15